***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence. The Full Commission adopts the Opinion and Award of Deputy Commissioner Holmes with minor modifications.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. It is stipulated that all parties were properly before the Industrial Commission and that the Industrial Commission has jurisdiction over the parties and of the subject matter. *Page 2 
2. It is stipulated that all parties have been correctly designated and there is no question as to misjoinder or nonjoinder of the parties.
3. It is stipulated that the parties were subject to the Workers' Compensation Act at the time of the alleged injury.
4. It is stipulated that an employer/employee relationship existed between the parties at the time of the alleged injury.
5. Defendant-employer in this case is the North Carolina Department of Correction and the claims administrator on the risk is Key Risk Management.
6. Plaintiff sustained a compensable workers' compensation injury to her right ankle on April 10, 2005. (I.C. No. 527265).
7. Plaintiff alleges that on October 9, 2006, she sustained an additional injury to her left foot while she was receiving treatment for her compensable right ankle injury. (I.C. No. 785677).
8. Plaintiff's average weekly wage is $544.54, yielding a compensation rate of $354.38.
9. Plaintiff was paid for the entire day of October 9, 2006.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff is currently employed with the North Carolina Department of Correction at the Harnett County Correctional Facility in Lillington, North Carolina where she has been employed as a correctional officer since October 13, 2003. *Page 3 
2. On April 10, 2005 plaintiff suffered an admittedly compensable right ankle injury. Plaintiff was able to return to work at the correctional facility at a light duty position working on the guard tower. Plaintiff continued to have problems with her right foot and ankle after therapy. Plaintiff experienced pain and swelling in the right ankle when standing for any length of time. Dr. Boone prescribed a compression stocking and an ankle brace and continued her on light duty.
3. In June of 2006 Dr. Boone released plaintiff from his care and assigned a permanent partial disability rating of thirteen percent (13%) to her right foot. Plaintiff was compensated for the impairment rating and continued to work for the North Carolina Department of Correction in a light duty capacity.
4. Plaintiff returned to Dr. Boone in August of 2006 after experiencing continued pain and swelling in her ankle. It was often necessary for plaintiff to elevate her foot as a result of the swelling. However, plaintiff continued to work in the guard tower at light duty. Dr. Boone referred plaintiff for a Functional Capacity Evaluation (FCE), which was scheduled on September 25, 2006. That FCE was re-scheduled when plaintiff's mother became terminally ill and passed away.
5. On October 9, 2006, plaintiff underwent an FCE at Raleigh Orthopaedic Clinic administered by Occupational Therapist Patricia Holdaway. During the FCE, plaintiff was required to kneel on the floor and place, remove, and replace objects in the area in front of her and over her head. Plaintiff was kneeling down on her knees for quite a while and was experiencing pain in her right ankle while engaged in this activity. After plaintiff completed the activity, plaintiff pushed off on her left foot to stand up and put all of her weight on the left leg and foot to avoid further discomfort and pain in her right ankle. *Page 4 
6. Plaintiff felt pain in her left foot when she put her weight on it and stood up. Plaintiff testified that she heard a pop when she stood up and that she asked Ms. Holdaway if she knew what the pop was.
7. Plaintiff's right ankle was swollen the day of the FCE, and on the following days plaintiff's left foot was swollen and sore. When plaintiff woke up the day following her FCE her left foot was swollen and she could hardly walk. Plaintiff was experiencing pain in her left foot. Plaintiff testified that she did not know anything was wrong with the left foot until the pain and swelling continued to worsen.
8. On October 11, 2006, two days after plaintiff's FCE, plaintiff contacted Ms. Holdaway about her left ankle condition. When plaintiff contacted Ms. Holdaway about the left ankle she was told to contact Dr. Boone.
9. On October 31, 2006, plaintiff attended a return appointment with Dr. Boone. Plaintiff described the incident during the FCE to Dr. Boone. She told him that she pushed off on her left ankle because her right ankle was painful and swollen. Dr. Boone examined plaintiff's foot and ordered an x-ray. Dr. Boone diagnosed plaintiff with a fracture of the left foot and recommended continued light duty.
10. Dr. Boone assigned plaintiff a ten percent (10%) permanent partial disability rating to the left foot. He released plaintiff to work at light duty with flexible sitting and standing. Plaintiff continued to work with defendant in the guard tower and did not miss any time from work as a result of her left ankle injury.
11. Plaintiff eventually received a letter informing her that the left foot claim had been denied by defendants. Plaintiff then filed a Form 18 and Form 33 Request for Hearing on *Page 5 
August 2, 2007. Defendants filed a Form 61 Denial of Workers' Compensation Claim on August 31, 2007.
12. Plaintiff never had any problems with her left foot prior to the FCE.
13. Ms. Patricia Holdaway is the occupational therapist that administered plaintiff's FCE. She testified that plaintiff contacted her on the afternoon of the FCE and informed her that her right ankle and foot were sore. She testified that plaintiff called a second time on October 11, 2006 and indicated that her left foot was swollen and sore.
14. Ms. Holdaway testified that plaintiff might have mentioned injuring her left foot during the evaluation and that at some point plaintiff probably reported some pain in her right ankle. She also testified that plaintiff took part in repetitive, weight-bearing activities and movements, including squatting, crawling, pushing and pulling.
15. Dr. Boone testified that plaintiff presented to him with left foot pain on October 31, 2006. Plaintiff reported that she was pushing off with her left foot during her FCE when she experienced acute pain in the area of her mid-forefoot. Dr. Boone testified that he had reviewed the FCE report. He testified that Ms. Holdaway's note indicating that plaintiff phoned her office a second time on October 11, 2006 and informed her that her left foot was swollen and sore, was consistent with what plaintiff reported to him on October 31, 2006.
16. Dr. Boone testified that it would be unusual to fracture a bone with the maneuver plaintiff described and it was his concern that plaintiff might have underlying bone pathology that contributed to the fracture. Dr. Boone ordered the CT scan to identify any underlying bone pathology. Dr. Boone testified that a remote fracture was seen involving the second metatarsal neck but that no underlying bone condition could be determined by reviewing the CT scan. *Page 6 
17. Dr. Boone opined and the Full Commission finds as fact that plaintiff's left foot fracture was related to the FCE activity which plaintiff underwent as a result of her compensable right ankle injury.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Our courts have held that "when the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct." English v. J.P. Stevens Co., 98 N.C. App. 466, 391 S.E.2d 499 (1990); Roper v. J.P. Stevens Co., 65 N.C. App. 69, 308 S.E.2d 485 (1983), disc. review denied, 310 N.C. 309,312 S.E.2d 352 (1984). In this case, plaintiff's left foot injury is a direct and natural consequence that flows from her compensable April 10, 2005 injury. Therefore, plaintiff suffered a compensable left foot injury arising out of and in the course of her employment with defendant during an FCE on October 9, 2006. N.C. Gen. Stat. § 97-2(6).
2. As a result of the compensable injury on October 9, 2006, plaintiff is entitled to receive payment of any medical procedures reasonably necessary to effect a cure, give relief, or lessen the period of plaintiff's disability. N.C. Gen. Stat. § 97-25.
3. Plaintiff is entitled to compensation for the ten percent (10%) permanent partial disability rating to her left foot. N.C. Gen. Stat. § 97-31.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following: *Page 7 
 AWARD
1. Subject to attorney's fees awarded herein, defendants shall pay to plaintiff permanent partial disability compensation at her weekly compensation rate of $354.38 for 14.4 weeks, for the ten percent (10%) impairment rating to plaintiff's left foot. Said amount shall be paid in a lump sum.
2. Defendants shall pay all medical expenses incurred for the treatment of plaintiff's October 9, 2006 compensable injury to the present and continuing so long as said treatment is reasonably necessary to effect cure, provide relief, and/or lessen any periods of disability.
3. An attorney's fee of twenty-five percent (25%) of the compensation awarded in Paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs, which include an expert witness fee of $300.00 to Patricia Holdaway and $530.00 to Dr. David W. Boone, if not already paid by prior order.
This the 16th day of February 2009.
S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE BALLANCE COMMISSIONER *Page 8 
 S/___________________ PAMELA T. YOUNG CHAIR *Page 1